Ernest D. ROMERO; State of Wyoming; and Wyoming State Highway Department, Petitioners,

v.

Richard W. HOPPAL individually and as Personal Representative of Jean M. Hoppal, deceased; Michelle Hoppal, Anita Hoppal, and Greg Hoppal by their next friend, Richard W. Hoppal, Respondents.

No. 92–159.

Supreme Court of Wyoming.

June 28, 1993.

Josephine T. Porter, Sr. Asst. Atty. Gen., for petitioners.

Mitchell E. Osborn, Cheyenne, for respondents.

Robert W. Tiedeken of Wolf & Tiedeken and George Santini of Graves, Santini & Villemez, Cheyenne, for amicus curiae, Wyoming Trial Lawyers Ass'n.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

This was an action by respondents Hoppal against petitioners, State of Wyoming and its employee, to recover personal injury and wrongful death damages. The State of Wyoming, claiming the bar of governmental immunity, moved for summary judgment. Respondents Hoppal moved also for summary judgment. The trial court denied the State's summary judgment motion and partially granted Hoppals' summary judgment, holding immunity was not available to the State. We granted the State's petition for writ of certiorari to answer the following question:

> Whether Wyo.Stat. § 1–39–120(a)(iii), in effect at the time of the accident, bars respondents' suit against petitioners when the collision occurred while the snowplow was in the process of maintaining the roadway to compensate for weather conditions.

We answer the question in the negative and affirm the district court's grant of partial summary judgment in favor of respondents.

On March 22, 1991, respondent Richard Hoppal was driving a 1988 Dodge Caravan westbound on Wyoming Highway 34 in Albany County, Wyoming (also known as Sybille Canyon Road). Decedent Jean Hoppal and respondents Michelle Hoppal, Anita Hoppal and Greg Hoppal were passengers in the vehicle. Ahead of the Hoppals on this highway, and traveling in the same direction, petitioner Ernest Romero, acting within the scope and course of his employment with petitioner Wyoming State Highway Department, was operating a state snowplow plowing snow from the road.

As the two vehicles proceeded westbound, the Hoppal van began to pass the snowplow in an authorized passing zone. To allow additional room for Hoppal to pass, Mr. Romero pulled the snowplow toward the right shoulder. The snowplow's blade, still engaged with the road, dug into the asphalt, causing the snowplow to rotate and flip over onto its side into the traffic lane of the passing Hoppal van. The van collided with the snowplow, causing Jean Hoppal's death and respondents' injuries.

Respondents Richard Hoppal, Michelle Hoppal, Anita Hoppal and Greg Hoppal filed a complaint seeking damages for personal injury and wrongful death against petitioners Ernest Romero, the State of Wyoming and the Wyoming State Highway Department. The complaint alleged that on March 22, 1991, Mr. Romero negligently caused respondents' injuries and Mrs. Hoppal's death.

The State moved for summary judgment claiming sovereign immunity. Respondents moved for partial summary judgment claiming the State had waived its immunity for state employees' negligent operation of motor vehicles, including snowplows. In granting the respondents' motion for partial summary judgment, the district court held that the State waived its immunity from suit for a state employee's negligent operation of a snowplow while plowing snow from state highways. The State, pursuant to Rule 13 of the Wyoming Rules of Appellate Procedure, petitioned for, and this Court granted, a writ of certiorari to review the district court's grant of respondents' partial summary judgment.

■ Summary judgment is proper when there is no disputed question of material fact and summary judgment should be entered as a matter of law. W.R.C.P. 56(c). The material facts for purposes of the motion are undisputed. The State's employee was operating a motor vehicle (snowplow) in the course of his employment at the time of the accident. The question of law presented is: "Was he maintaining the highway at the time within the meaning of our statute?"

We review summary judgments in the same light as the district court, using the same materials and following the same standards. Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Elmore v. Van Horn,* 844 P.2d 1078, 1081 (Wyo.1992) (*quoting Zmijewski v. Wright,* 809 P.2d 280, 282 (Wyo.1991)).

■ At the time of this accident, W.S. 1–39–105, concerning governmental immunity, provided:

*A governmental entity is liable for damages* resulting from bodily injury, wrongful death or property damage *caused by the negligence* of public employees while acting within the scope of their duties *in the operation of any motor vehicle,* aircraft or watercraft. [emphasis added]

Wyoming Statute 1–39–120(a)(iii) provided:

(a) The liability imposed by W.S. 1–39–105 through 1–39–112 does not include liability for damages caused by:

\*    \*    \*    \*    \*    \*

(iii) The maintenance, including maintenance to compensate for weather conditions, of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area.

In holding that W.S. 1–39–120(a)(iii) did not bar respondents' suit against the State, the district court stated:

I believe that the words "motor vehicles," as used in 1–39–105, and "the maintenance, including maintenance to compensate for weather conditions of any \* \* \* highway[,] roadway \* \* \*," as used in 1–39–120, are mutually exclusive and that the waiver of immunity, attached to "motor vehicles" in "105," is not affected by the assertion of immunity in "120" in its reference to maintenance.

\* \* \* Clearly, the word maintenance [in W.S. 1–39–120(a)(iii) is] a noun and not a verb [and] means that the maintenance is not the act of maintaining, but rather the result of any said act.

In light of recent legislative enactments, we find the district court's reasoning persuasive. In 1991, the legislature amended W.S. 1–39–120(a), removing the reference to W.S. 1–39–105. As amended, W.S. 1–39–120(a)(iii) reads:

(a) The liability imposed by *W.S. 1–39–106* through 1–39–112 does not include liability for damages caused by:

\*    \*    \*    \*    \*    \*

(iii) The maintenance, including maintenance to compensate for weather conditions, of any bridge, culvert, highway,

roadway, street, alley, sidewalk or parking area. [emphasis added]

The statement of purpose in the enacting clause explains the amendment to W.S. 1–39–120(a):

AN ACT to amend W.S. 1–39–120(a) introductory paragraph relating to the Wyoming Governmental Claims Act; providing that the *liability of governmental entities for damages resulting from negligent operation of vehicles includes vehicles engaged in specified construction and maintenance activities;* and providing for an effective date.

1991 Wyo. Sess. Laws, ch. 34 § 1 (emphasis added).

The State concedes that the legislature's amendment of W.S. 1–39–120(a) does abrogate immunity after the effective date of the amendment. It is also clear that before adoption of amended W.S. 1–39–120(a) immunity was waived for negligent operation of motor vehicles. The State contends, therefore, that beginning in 1986 with the adoption of amended W.S. 1–39–120(a) and ending July 1, 1991, when it was further amended to exclude W.S. 1–39–105, the State had immunity for the negligent operation of a motor vehicle while plowing snow.

The State argues that the district court's interpretation of these statutes is inconsistent in that it allows immunity for failure to maintain a roadway to compensate for weather conditions, but no immunity for the actual maintenance itself. We fail to perceive the inconsistency. Hoppals respond that the State's position would allow it to successfully assert immunity even if a highway maintenance employee or a snowplow operator negligently turned his vehicle into oncoming traffic or if a highway design engineer should rear-end another vehicle on his way to a bridge job. We think respondent's argument is well taken.

■ The State next points to an affidavit given by the sponsor of the legislation which deleted the reference in W.S. 1–39–120 to section 1–39–105 claiming that because the sponsor felt it necessary to amend W.S. 1–39–120, that immunity therefore must have existed before the amend-ment. Rather than supporting the State's interpretation, the amendment which deleted the reference to W.S. 1–39–105 demonstrates that the legislature was concerned that the then existing language in the statute might lead to a result not intended. The sponsor evidently feared that liability for operation of motor vehicles, which the legislature had established by statute, might be abrogated by judicial interpretation. Therefore, the legislature made clear that there is no bar to liability for operation of a motor vehicle, even if the motor vehicle is engaged in plowing snow on a roadway. We have held that " 'where, in the enactment of a law, the legislature employs in a subsequent clause of the same act or in later legislation on the same subject language clarifying a doubtful expression theretofore used, the court should give that language the meaning the legislature intended.' " *State Bd. of Equalization v. Stanolind Oil & Gas Co.,* 54 Wyo. 521, 94 P.2d 147, 153 (1939) (*quoting Moore v. Pleasant Hasler Const. Co.,* 51 Ariz. 40, 76 P.2d 225 (1937)). *See also Osborne v. Consolidated Judicial Retirement Sys.,* 333 N.C. 246, 424 S.E.2d 115, 117 (1993); *State v. Nuckolls,* 606 So.2d 1205, 1207 (Fla.App. 1992) (subsequent legislation adopted to clarify the legislature's intention is properly considered in construing a prior statute); *Daley v. Zebra Zone Lounge, Inc.,* 236 Ill.App.3d 511, 177 Ill.Dec. 715, 717, 603 N.E.2d 785, 787 (1992) (subsequent amendment may reveal intent, especially when amendment enacted soon after "controversy developed over the original version").

The State also cites two prior cases from our court, *Oroz v. Board of County Comm'rs,* 575 P.2d 1155 (Wyo.1978) and *Soles v. State,* 809 P.2d 772 (Wyo.1991). The State contends that in *Oroz,* the court addressed the issue of whether the county was immune from suit for the negligent maintenance of a county highway. Based on *Oroz,* the State argues: "Certainly, if the court considers the growth of trees along the side of a roadway to be 'maintenance,' the operation of a snowplow, while clearing slush off the highway is within the reach of the immunity granted for mainte-

nance of a roadway to compensate for weather conditions." We have examined Chief Justice Guthrie's opinion in *Oroz* and nowhere does the court construe the term "maintenance." *Oroz*, 575 P.2d at 1156–59. In *Oroz* this court, in abolishing governmental immunity as applied to counties, did not interpret the term "maintenance."

*Soles v. State*, involved a suit against the State to recover damages when a person was injured on a stairway that the State, allegedly, negligently inspected. *Soles*, 809 P.2d at 772–73. The district court found that the State was immune from suit and granted summary judgment in favor of the State, and this court affirmed. *Soles*, 809 P.2d at 772. The plaintiffs in *Soles* sought to overcome the State's immunity by utilizing W.S. 1–39–106, which imposes liability on governmental entities for damages caused by "the negligence of public employees" in the "operation or maintenance of any building, recreation area or public park." W.S. 1–39–106. This court found that immunity was not waived by section 1–39–106 because the inspections conducted by the State were simply "not 'maintenance' as contemplated by that statute." *Soles*, 809 P.2d at 773–74.

The State argues that the definition from *Soles*, shows that maintenance means the act of maintaining or keeping something in a state of repair and therefore includes the negligent operation of a motor vehicle in the act of plowing snow. The State misperceives the application of *Soles*. In *Soles* we were construing a different section of the statute, W.S. 1–39–106. We only examined what the legislature intended by use of the word "maintenance" as applied to the "inspection" that was done by the county. We have difficulty applying the interpretation of the word "inspection" to an analogy involving the negligent operation of a snowplow. Therefore, our decision in *Soles* does not control the outcome of this case.

The legislature's subsequent amendment of W.S. 1–39–120(a)(iii) demonstrates it always intended the State not have immunity for accidents resulting from the negligent operation of motor vehicles, including snowplows. This later enactment confirms that the district court's interpretation of W.S. 1–39–120(a)(iii) accurately reflects the legislature's intent. We therefore hold that W.S. 1–39–120(a)(iii), in effect at the time of the accident, does not bar respondents' suit against petitioners. The district court's order granting partial summary judgment is, therefore,

Affirmed.

THOMAS, J., filed a dissenting opinion.

THOMAS, Justice, dissenting.

I cannot agree with the result of the majority opinion, which affirms the grant of a partial summary judgment entered by the trial court in favor of the respondents. According to the majority, the waiver of immunity for negligence in the Wyoming Governmental Claims Act set forth in WYO. STAT. § 1–39–105 controlled over the provisions of WYO.STAT. § 1–39–120, which maintains governmental immunity for "the maintenance, including maintenance to compensate for weather conditions, of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area." The effect of the majority opinion is that the substantive impact of the Governmental Claims Act before the amendment of § 1–39–120 was identical to its substantive impact after the amendment. I cannot agree that the legislature did not intend a change in the law in 1991, and I dissent. I would not grant the motion for summary judgment sought by the State, however, because I perceive a factual issue as to whether § 1–39–105 or § 1–39–120 should control immunity in this instance.

At the time of the occurrence that led to this case, WYO.STAT. § 1–39–120 (1988) read:

**Exclusions from waiver of immunity.**
(a) The liability imposed by W.S. 1–39–105 through 1–39–112 does not include liability for damages caused by:
(i) A defect in the plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area;
(ii) The failure to construct or reconstruct any bridge, culvert, highway,

roadway, street, alley, sidewalk or parking area; or

(iii) The maintenance, including maintenance to compensate for weather conditions, of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area.

In 1991, WYO.STAT. § 1–39–120 (Supp.1992) was amended to read:

**Exclusions from waiver of immunity.**

(a) The liability imposed by W.S. 1–39–106 through 1–39–112 does not include liability for damages caused by:

(i) A defect in the plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area;

(ii) The failure to construct or reconstruct any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area; or

(iii) The maintenance, including maintenance to compensate for weather conditions, of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area.

Obviously the only change was to delete the reference to "W.S. § 1–39–105" in this statutory provision. WYO.STAT. § 1–39–105 (1988), at the time of this occurrence and now, reads:

**Liability; operation of motor vehicles, aircraft and watercraft.**

A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any motor vehicle, aircraft or watercraft.

Neither of these statutory provisions is ambiguous, and there is certainly nothing ambiguous about the number 5, which later was changed to the number 6 by amendment. The majority opinion seems to treat the reference in WYO.STAT. § 1–39–120 (1988), to "W.S. § 1–39–105 [ (1988) ]" as nothing more than a typographical error.

In *Parker Land and Cattle Co. v. Wyoming Game and Fish Comm'n*, 845 P.2d 1040, 1044 (Wyo.1993), in connection with a comprehensive review of rules of statutory construction, we said:

For example, "It is generally held that statutes authorizing suit against the state are to be strictly construed, since they are in derogation of the state's sovereignty." *Harrison v. Wyoming Liquor Comm'n*, 63 Wyo. 13, 24–25, 177 P.2d 397, 399 (1947); *accord Retail Clerks Local 187 v. Univ. of Wyoming*, 531 P.2d 884, 886 (Wyo.1975). Thus, we require in this particular area of the law that evidence of legislative intent be both unequivocal and textual. *Retail Clerks Local 187*, 531 P.2d at 886 ("We find no words of clear or direct consent to suit against the state contained in these statutes, and consent must be clearly shown"). (Footnote omitted.)

We also have frequently repeated the rule that every word, clause, and sentence must be construed so that no part is inoperative or superfluous when read *in pari materia*. *E.g.*, *Vanasse v. Ramsay*, 847 P.2d 993 (Wyo.1993); *Parker Land and Cattle Co. v. Wyoming Game and Fish Comm'n*, 845 P.2d 1040 (Wyo.1993); *Wyo. Ins. Guar. v. Allstate Indem.*, 844 P.2d 464 (Wyo.1992); *Johnson v. State Hearing Examiner's Office*, 838 P.2d 158 (Wyo.1992); *Matter of ALJ*, 836 P.2d 307 (Wyo.1992); *Schulthess v. Carollo*, 832 P.2d 552 (Wyo.1992); *State By and Through Dep't of Family Services v. Jennings*, 818 P.2d 1149 (Wyo.1991); *Matter of Paternity of JRW*, 814 P.2d 1256 (Wyo.1991); *City of Laramie v. Facer*, 814 P.2d 268 (Wyo.1991). By contrast, the majority opinion offers a liberal construction of the Wyoming Tort Claims Act, and does not give effect to the unambiguous provisions of § 1–39–120.

This case is a peculiarly appropriate one in which to apply the doctrine articulated in *Wetering v. Eisele*, 682 P.2d 1055, 1061 (Wyo.1984):

We further must assume that the legislature did not intend futile acts and that its amendment of the statute indicated some change in the existing law was intended. *DeHerrera v. Herrera, supra* [565 P.2d 479 (Wyo.1977) ]; *Jordan v. Delta Drilling Company, supra* [541 P.2d 39, 78 A.L.R.3d 1215 (Wyo.1975) ]; and *In re Kosmicki*, Wyo. 468 P.2d 818 (1970).

*See also, Barcon, Inc. v. State Bd. of Equalization,* 845 P.2d 373, 380 (Wyo. 1992).

There seems little question that the New Mexico Tort Claims Act was available to the Wyoming legislature when the Wyoming Governmental Claims Act was adopted, and at least one scholar has suggested that it served as a model for the Wyoming statute. Lawrence J. Wolfe, *Wyoming's Governmental Claims Act: Sovereign Immunity With Exceptions—A Statutory Analysis,* 15 Land and Water L.Rev. 619, 623 (1980). Yet, the New Mexico Tort Claims Act never has provided immunity for maintenance of highways. N.M.STAT.ANN. § 41–4–11 (Michie 1989). Obviously, this fact was known to the Wyoming legislature and, in 1986, when WYO. STAT. § 1–39–120 (1988) was adopted, a studied choice was made to extend immunity to maintenance activities despite the waiver in Wyo.Stat § 1–39–105 (1988). In 1991, that choice was revisited and a change was made.

In the Brief of Plaintiffs/Respondents the following argument appears:

> If a Wyoming snowplow driver is immune from liability, regardless of the circumstances, just because he is involved in "maintenance", § 1–39–105 and § 1–39–120 are in conflict. Therefore, to reconcile the language of these statutes, § 1–39–120 must be read and applied only to exclude liability when damages are "caused by the maintenance".

Brief of Plaintiffs/Respondents at 7.

It is in following this analysis that I am persuaded the plaintiffs are entitled to a trial in this case. The apparent conflict between the two statutes, both of which are to be given effect if reconciliation is possible, is resolved by recognition that the facts must determine which statute applies. If the accident was caused by Romero while acting negligently in the operation of the snow plow as a motor vehicle, there is no immunity. If the accident was caused by Romero while acting negligently in "[t]he maintenance, including maintenance to compensate for weather conditions, of any * * * highway, * * *," then immunity pertains. The jury must decide what Romero was doing at the time of the accident. This resolution affords recognition, and application, of the foregoing principles of statutory interpretation.

I would reverse the decision of the district court granting a partial summary judgment on the question of sovereign immunity. The presence or absence of immunity should be resolved by the finder of fact based upon proper instructions.