[Civil No. 3687. Filed March 2, 1936.]

[54 Pac. (2d) 1002.]

FRANK LUKE, THAD M. MOORE and D. C. O'NEIL, as Members of and Constituting the State Tax Commission of the State of Arizona, Appellants, v. EAST VULTURE MINING COMPANY, a Corporation, Appellee.

Mr. John L. Sullivan, Attorney General, and Mr. A. I. Winsett, Assistant Attorney General, for Appellants.

Messrs. Cornick & Carr and Mr. W. T. Elsing, for Appellee.

ROSS, J.—Section 2 and paragraph 1 of subdivision (c) thereof, article 2, chapter 77, Laws of 1935, provided that the state tax commission shall levy and collect a privilege tax of 1 per centum upon the gross proceeds of sales or gross income from the businesses of "mining, quarrying, smelting or producing for sale, profit, or commercial use any . . . gold, silver or other mineral product," the amount of such tax to be determined by the application of the rate of the tax against values, gross proceeds of sales, or gross income, as the case may be.

The appellee East Vulture Mining Company, hereinafter referred to as the mining company, on May 22, 1935, and after the effective date of chapter 77, *supra,* sold, transferred and delivered to the mint of the United States at San Francisco gold bullion, for which it received $3,402.49, and, at the same time, the mint paid the mining company $17.16 for silver

bullion. The mining company paid to the appellant tax commission 1 per centum on the value of this bullion, or $34.20.

The mining company also shipped concentrates to the United Verde Extension Mining Company for processing, from which said concentrates it received the sum of $1,068.64 from the government of the United States; and upon which it paid the appellant tax commission a tax of 1 per centum, or $10.68.

These taxes were paid under protest, as permitted in section 17 of said chapter, and thereafter the mining company brought this action for their recovery. Defendant tax commission demurred to the complaint. The court overruled the demurrer and entered judgment for the plaintiff mining company, from which judgment the tax commission has appealed.

The question involved is the right of the state to levy and collect an excise tax on gold and silver bullion mined in the state of Arizona and thereafter sold or transferred to the government of the United States for an equivalent amount of any other form of currency or coin issued or coined under the laws of the United States.

■■ It is the contention of the mining company that the privilege tax is not applicable to sales of gold and silver bullion to the government of the United States, for two reasons, the first being that the provisions of chapter 77, *supra,* do not permit such taxes to be levied and collected, and the second being that, because gold and silver bullion are means or instrumentalities employed or used by the national government in the performance of its functions, they may not be taxed or burdened or interfered with by the state.

Section 7, article 2 of said chapter, so far as pertinent, reads as follows:

"The taxes herein levied shall not be construed to apply to . . . any sales made to the United States government, its departments or agencies."

If the transactions by which the bullion became the property of the government were "sales," it would seem the above quoted provisions of section 7 settle the matter. In our statement of the facts, we describe the transactions as sales. So far as the silver bullion is concerned, there can be no doubt it was a sale. Silver is an article of commerce, and is trafficked in the same as oil, wheat, corn, etc. This is not true of gold. As is said in *Nortz* v. *United States*, 294 U. S. 317, 55 Sup. Ct. 428, 431, 79 L. Ed. 907, 95 A. L. R. 1346:

"Congress had power 'to appropriate unto the Government outstanding gold bullion, gold coin and gold certificates.' . . . Authority 'to compel all residents of this country to deliver unto the Government all gold bullion, gold coins and gold certificates in their possession.' These powers could not be successfully challenged."

The act of Congress giving this power to the government speaks of the transaction as though it were a sale, and requires the Secretary of the Treasury to pay for the gold coins, gold bullion or gold certificates "an equivalent amount of any other form of coin or currency coined or issued under the laws of the United States." 12 U. S. C. A., § 248 (n).

We conclude that, even though the disposition of gold coin, gold bullion and gold certificates by the owner can be made to the United States only, and upon terms and conditions fixed by the United States, such a transaction, when acquiesced in by the owner, is a *sale* within the meaning of said section 7, *supra*. The fact that it is a forced sale does not make it any the less a sale.

There is a vast amount of learning in the books on the second proposition made by appellee, but any discussion thereof would be more or less academic.

■ Since we have found that the legislature never intended to tax sales to the United States government, its departments or agencies, and specifically so announced in section 7, *supra,* the judgment of the lower court is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.