173 P.2d 633

**O'NEIL et al. v. BYRNE.**

No. 4874.

Supreme Court of Arizona.

Oct. 21, 1946.

John L. Sullivan, Atty. Gen., Harry O. Juliani, Chief Asst. Atty. Gen., and Burr Sutter, Asst. Atty. Gen., for appellants.

Byrne and McDaniel, of Prescott, for appellee.

LA PRADE, Justice.

In this opinion we shall designate the appellants as the "Commission" and the appellee as the "Company" or "Trustee." The appellee is the trustee .of an express trust and is vested with title to all the assets of the Iron King Mining Company. The Company was engaged in the operation of the Iron King Mine in Yavapai County, near the town òf Humboldt, Arizona. It commenced operations in the year 1937; constructed a mill in the latter part of the year 1938; and commenced milling its ores in October of that year, producing bulk concentrates, nearly all of the values of which were gold and silver. In 1940, it enlarged its flotation plant to separate zinc. The first ores mined by it were very low in that metal, but their zinc content became higher as the mine operation continued so that it was economically

advantageous to capture its values. In 1940, the Company, to improve the extraction of zinc, installed a cyanide plant, its tests at that time indicating that before floating its ores, cyanidation permitted extraction of a large part of the gold and silver in a highly concentrated form and reduced freight and treatment charges. Had the Company continued with its cyanide process before flotation, the lead concentrate would have had very little value after paying the freight and treatment charges. The flotation process used by the Company required too close a regulation. The Company decided not to cyanide ahead of the flotation and to make a low-grade zinc concentrate and a low-grade lead concentrate. This was advisable in view of the fact that the zinc content became higher.

The lead and zinc concentrates shipped by the Company to the smelters during the taxable period had their weight in the base metal content. In a carload of lead concentrates weighing 100,000 pounds, there might be 100 pounds in the weight of the precious metals. Smelter charges were incurred because of the base metal content of the concentrates and not the precious metal content.

On July 1, 1942, the properties of the Iron King were acquired and thereafter operated by the Shattuck Denn Mining Company. In October, 1942, the Commission, under the provisions of the Excise Revenue Act, Article 13 of Chapter 73, A. C.A.1939, levied a sales tax against the gross proceeds of the sales of the Company received after January 1, 1942, to and including August 10, 1942. The tax levied was in the sum of $3,873.12. The trustee paid the tax under protest and petitioned for a hearing. The Commission sustained the objection of the trustee as to an overpayment of tax in the sum of $198.24, and entered its order denying the protest and sustaining the assessment of the tax in the amended sum of $3,674.88. The trustee admitted liability of $1,487.45 and brought suit in the superior court to recover $2,-187.43, being the claimed overpayment of tax demanded and theretofore paid under protest. Under the provisions of Section 73-1308, A.C.A.1939, as interpreted in Luke v. East Vulture Mining Co., 47 Ariz. 220, 54 P.2d 1002, the gross proceeds from sales of gold and silver are not taxable, being sales to the United States government. The difference between the computations of the Commission and the Company of sales tax came about solely by reason of the Commission's charging freight and smelter costs against the precious metal content in proportion to its value as compared with the total concentrate value. Both freight rates and smelter charges are based on tonnage and not on values.

By the provisions of Section 73–1309, Id., the selling price of mining products shall be reduced by the amount of the actual freight paid by the taxpayer from the place of production to the place of de-

livery when such freight is included in the sales price of such products. In the instant case, the records show that the Company paid out the sum of $28,006.26 for trucking the concentrates from mine mill to railroad loading point. The smelter, before remitting to the Company, retained the sum of $184,128.12 to pay for its treatment charges and to reimburse it on account of advances made by it in payment of freight charges. The trustee recovered judgment in the lower court for $2,187.43. The appeal is from this judgment.

It was the contention of the plaintiff in the lower court and is here that all freight and treatment charges should be deducted from the gross proceeds of sales of the lead and zinc recovered and sold from the concentrates. It was and is the position of the Commission that in computing gross proceeds of sales for the purpose of assessment under the Excise Revenue Act freight charges should be allocated on a basis of the proportionate values of the taxable and non-taxable metals sold. The Company submitted the following tax computation:

$ 802,035.69—Lead concentrates, 1–1–40 to 7–1–42

325,816.77—Zinc concentrates, 1–1–40 to 7–1–42

$1,127,852.46—Gross Production, 1–1–40 to 7–1–42

184,128.12—Freight and treatment charges

$ 943,724.34—Net Smelter Returns

28,006.26—Trucking charges

$ 915,718.08

760,664.67—Gold and Silver (Not Taxable)

$ 155,053.41—Net Value Base Metals

$ 1,550.53—Tax at 1%

The Commission's computation is in words and figures as follows:

| | |
|---|---:|
| Net Smelter Returns 1–1–40 to 6–8–42 | $1,006,612.65 |
| Net Smelter Returns 6–9–42 to 7–25–42 | 47,316.30 |
| Net Smelter Returns 7–26–42 to 8–10–42 | 6,104.82 |
| Total | $1,060,033.77 |
| Gold and Silver (Non-taxable) | 664,539.66 |
| Net Production | $ 395,494.11 |
| Trucking Charges | $ 28,006.26 |
| Net Value Base Metals | $ 367,487.85 |

Tax Liability 1% $3,674.88

The appellee submits that the issue before the court on the trial of the case was:

"Should freight and smelter charges be taxed proportionately against metal values contained in concentrates or should they be taxed on the basis of tonnage and weights of the various metals in the concentrates?"

Appellee contends that under the sales tax law freight and smelter charges were incurred by reason of the base metal content of the concentrates, and should, therefore, be considered wholly as an expense deductible before determining the value subject to tax.

The tax involved in this case is an excise tax levied for the purpose of raising revenue. The applicable provisions of the code referred to above are as follows:

"Sec. 73-1303. Imposition of the tax.— From and after the effective date of this act, there is hereby levied and shall be collected by the tax commission for the purpose of raising public money to be used in liquidating the outstanding obligations of the state and county governments, to aid in defraying the necessary and ordinary expenses of the state and the counties, to reduce or eliminate the annual tax levy on property for state and county purposes, and to reduce the levy on property for public school education to the extent hereinafter provided, annual privilege taxes measured by the amount or volume of business done by the persons on account of their business activities and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, in accordance with the following schedule:"

\*　　\*　　\*　　\*　　\*　　\*

"(c) At an amount equal to one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

"1. Mining, quarrying, smelting or producing for sale, profit, or commercial use any oil, natural gas, limestone, sand, gravel, copper, gold, silver or other mineral product, compound or combination of mineral products, or felling, producing or preparing timber or any product of the forest for sale, profit or commercial use."

"Sec. 73-1304. Additional manufacturing outside the state.—If any person engaging in any business classified in paragraph 1, subdivision (a) and paragraph 1, subdivision (c) of section 2 (§ 73-1303) of this article shall ship or transport products, or any part thereof, out of the state without making sale of such products, or shall ship his products outside of the state in an unfinished condition, the value of the products or articles in the condition or form in which they existed when transported out of the state and before they enter interstate commerce shall be the basis for assessment of the tax imposed by said section, and the commission shall prescribe equitable and uniform rules for ascertaining such value."

"Sec. 73-1309. Freight deduction.—In computing the amount of tax levied by this article upon the business activities classified in subdivision (a) and paragraph 1 of subdivision (c) of section 2 (§ 73-1303) of this article, such selling price shall be reduced by the amount of the actual freight paid by the taxpayer, from the place of

production to the place of delivery, when such freight is included in the sale price of such products."

Section 73-1309, supra, does not specifically provide how or under what circumstances freight charges should or can be legally apportioned or prorated to such a set of facts as are here presented. However, by Section 73-1333, A.C.A.1939, the Tax Commission is given authority to make rules and regulations to carry out the provisions of the Act and to secure its efficient enforcement. No rule had been promulgated, though from the evidence it appears that it had been the practice of the Tax Commission to allocate freight costs as deductions to all metals according to their proportionate values.

Section 73-1304, supra, is applicable to the metals sold and under consideration. It was not until after the concentrates had left the state and had been smelted and segregated, and sold that "the value of the products or articles in the condition or form in which they existed when transported out of the state and before they enter interstate commerce" could be ascertained and used as the basis for assessment of the tax imposed.

The value of the concentrates is the amount paid by the purchasing smelter for the metals contained in the concentrates (excluding gold and silver which are not taxable) over and above its direct marketing costs. These costs include trucking charges from mill to railroad, freight charges in carrying the concentrates to the smelter, and the smelter charges. It was not made to appear that there were any smelter charges applicable to the precious metal content of the concentrates shipped. The freight rates and smelter charges were based on tonnage and not on values. It would appear that the freight charges were not perceptibly affected on account of the precious metal content in the concentrates. Not more than one-tenth of one per cent of the weight carried was in the precious metals. By the provisions of Section 73-1304, supra, the Commission is required to prescribe equitable and uniform rules for ascertaining the values to which the rate is to be applied. The amount of the tax is the figure which will result by using the rate of one per cent against the value of the product. As above pointed out, the Commission had not adopted any rules or regulations but had been in the habit of arbitrarily allocating freight costs as deductions to all metals according to their proportionate values. Such a practice ignores the fact that the freight costs were on tonnage and not on values. Had it been made to appear that the freight and treatment charges of the concentrates were appreciably greater by virtue of the precious metal content, then there would have been some basis, in part, for the attempted assessment of the tax.

Accordingly, the judgment is affirmed.

STANFORD, C. J., and MORGAN, J., concur.