179 P.2d 252

## DUHAME v. STATE TAX COMMISSION et al.

### No. 4948.

Supreme Court of Arizona.
March 12, 1947.

Whitney, Ironside & Whitney, of Phoenix, for appellant.

John L. Sullivan, Atty. Gen. and Burr Sutter, Asst. Atty. Gen., for appellees.

UDALL, Judge.

Appellant, E. W. Duhame, a licensed contractor commenced this action against the appellee State Tax Commission of Arizona, to recover taxes paid under protest in the sum of $10,778.23. The parties will hereafter be referred to as the plaintiff and the Commission.

The Commission moved for the dismissal of the forty-two page complaint on the ground that none of the five causes of action stated therein set forth a claim upon which relief could be granted. The court granted the motion, and the plaintiff declined to plead further. After entry of judgment dismissing the action, plaintiff appealed to this Court.

The taxes in question were exacted under the Excise Revenue Act of 1935 as amended, and arise from the construction of war projects in Arizona, during the years 1942–3, for the United States government. The gross amount received by plaintiff from his government contracts was $2,505,316.33. From his gross receipts, before calculating the tax due, the Commission subtracted all payments made for labor, to subcontractors, for Social Security, Unemployment and Workmen's Compensation exactions, leaving a balance of $1,077,823 upon which the tax was calculated at

1%. Of this latter figure $726,843.02 was the cost of the materials, consisting of tangible personal property furnished by plaintiff, and $350,978.98 represented the charge for fabricating all of said materials. The completed buildings, structures and appurtenant facilities were all erected upon lands belonging to the government.

It is of course axiomatic that a motion to dismiss admits the truth of all ultimate allegations of fact. However such a motion does not admit any legal conclusions pleaded. Swank v. Young, 60 Ariz. 18, 130 P.2d 918.

*Constitutionality of the Act:*

At the outset we are confronted with a very pointed and searching attack on the constitutionality of the entire Excise Revenue Act of 1935 as amended, which is found in art. 13, secs. 73-1301 to 73-1334, inclusive, A.C.A.1939 (hereinafter referred to as the Act). By a brilliant oral argument and the submission of masterly briefs, counsel for plaintiff has recited in detail the alleged infirmities of the law in question. This has caused the Court painstakingly to review the entire Act and its purposes, as well as all of our prior interpretations thereof.

As stated by 73-1303, "* * * there is hereby levied and shall be collected by the tax commission for the purpose of raising public money * * * annual privilege taxes measured by the amount or volume of business done * * *". (Thereinafter follows a listing of nine groups of businesses, 73-1303(a), (b), (c), (d), (e), (f), (g), (h), (i), and the tax bases and rates applicable to each.)

This is, therefore, the same kind of tax as to each and every business or group thereof, encompassed by the Act.

We agree with the plaintiff that one of the prime requisites of any statute is certainty,—a requirement that applies with special force to a taxing statute. An act which imposes a tax must be certain, clear and unambiguous, especially as to the subject of taxation and the amount of the tax. 51 Am.Jur., p. 357, Taxation, sec. 303; 59 C.J., p. 601, Statutes, sec. 160; Western Union Telegraph Co. v. State of Texas, 62 Tex. 630, 635; 40 Tex.Jur., p. 72, sec. 46; Williams v. City of Richmond, 177 Va. 477, 14 S.E.2d 287, 134 A.L.R. 833. The legislature must fix the mode of determining the amount of tax "with such a degree of precision as to leave no uncertainty that cannot be removed by mere computation". 61 C.J. p. 567, Taxation, sec. 694, note 14; Gadd v. McGuire, 69 Cal.App. 347, 231 P. 754, 762; People v. Board of Sup'rs of Kings County, 52 N.Y. 556, 567.

"In order that a statute may be held valid, the duty imposed by it must be prescribed in terms definite enough to serve as a guide to those who have the duty imposed upon them. * * * When it leaves the Legislature a law must be complete in

all its terms, and it must be definite and certain enough to enable every person, by reading the law, to know what his rights and obligations are and how the law will operate when put into execution * * *". Vallat v. Radium Dial Co., 360 Ill. 407, 196 N.E. 485, 487, 99 A.L.R. 607; Barry v. Board of Directors of Imperial Irr. Dist., 7 Cal.App.2d 412, 46 P.2d 298, 305.

Such historic principles of law have been applied uniformly by the Arizona Supreme Court. Tillotson v. Frohmiller, 34 Ariz. 394, 403, 271 P. 867. These principles have a pointed application to this tax statute in which obedience to the Act is exacted by authorizing punishment and penalties, and by such coercive measures as being adjudged a criminal and subjected to a fine or imprisonment, secs. 73-1312, 73-1324; having to pay a penalty of twenty percent added to the amount of the tax, sec. 73-1314, and being enjoined from continuing in business in reference to which a tax assessed pursuant to the Act is unpaid, sec. 73-1328. Here the constitutional requirement that a statute to be valid must be definite and certain is not open to question. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322; State v. Jay J. Garfield Bldg. Co., 39 Ariz. 45, 3 P.2d 983; State of Arizona v. Walgreen Drug Co., 57 Ariz. 308, 113 P.2d 650; Francis v. Allen, 54 Ariz. 377, 96 P.2d 277, 126 A.L.R. 190; City of Tucson v. Stewart, 45 Ariz. 36, 40 P.2d 72, 96 A.L.R. 1492.

We further agree with the plaintiff that if the Act sets up alternate and differing bases or measures by which an individual businessman may determine the amount of his privilege tax owing, and actually requires or allows such a person the freedom of selecting under which of these bases he shall file, the Act in this respect would be indefinite, uncertain and vague. The danger of allowing the taxpayer a choice under a vague statute, or a statute with alternate and differing bases of computation, is the possibility that the Commission and court later might declare his choice improper. And insofar as the taxpayer was thereby penalized (through no fault of his own but rather because of a statute which either purported to give him an option, or was so vague that he was uncertain as to which base to use), he would be deprived of property without due process of law.

Further, if under such a statute the Commission selected one of these vague, or alternate and differing bases for a taxpayer, such a selection would not only be a violation of due process of law as regards that taxpayer, but would be an unconstitutional act of legislation by a Commission to whom the power to legislate was not delegated.

An excellent statement of the principle of law here involved appears in Larabee Flour Mills Co. v. Nee, D. C., 12 F.Supp. 395 (remanded on another point after the United States Supreme Court in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed.

477, 102 A.L.R. 914 and Rickert Rice Mills v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 80 L.Ed. 513, held the Agricultural Adjustment Act unconstitutional). There the Court said: "Congress cannot surrender any part of the legislative power. The Constitution vests that power exclusively in Congress. The power to tax is a legislative power. The power to tax includes the power to say what shall be taxed, who shall pay it, what the tax shall be." 12 F. Supp. at page 402. "* * * What Congress cannot do is to delegate to an administrative official not only the power to fix a rate of taxation according to a standard, but also the power to prescribe the standard. Congress must prescribe the standard * * * an intelligible standard, a definite standard. It must be like a yardstick which is three feet long by whomsoever it is used, not one which in the hands of one man is three feet long, in the hands of another two feet long, and in the hands of a third four feet long, elastic at the will of the individual applying it." 12 F.Supp. at page 403.

The section of the Act relating to contractors here in question, 73-1303 (h), states that the tax shall be levied "At an amount equal to one per cent of the *gross proceeds or gross income* from the business, upon every person engaged or continuing in the business of contracting. Payments made by the contractor for labor employed in construction, improvements or repairs shall not be subject to the tax herein imposed." (Emphasis supplied.)

It is the contention of the plaintiff that when the phrase "gross proceeds" is construed in pari materia, the conclusion must be reached that it is synonymous with "gross proceeds of sales", and not with "gross income". This contention is amply supported on many grounds. First, "gross proceeds of sales or gross income" is used as the tax base for seven of the nine groups of businesses upon which the privilege tax is levied, 73-1303 (a), (b), (c), (d), (e), (f), (g); while the last two groups of businesses taxes, 73-1303 (h), here in question, and 73-1303 (i), use the phrase "gross proceeds or gross income".

Consistency would seem to dictate that the Legislature did not intend to introduce a new and different tax base for contractors and for sellers of poultry and stock feed, subsecs. (h) and (i), as to both of whom the 1937 amendments prescribed the base to be "gross proceeds or gross income". Further, 73-1312 requires a license to be obtained by "Every person having a gross proceeds of sales or gross income upon which a privilege tax is imposed by this article"; 73-1323 directs the Commission and its agents "shall not divulge the gross income, gross proceeds of sales * * *"; and 73-1322 (a) requires that the amounts of the revenues collected under the Act, to be paid to the several counties, shall be calculated in part on "the tax moneys collected under this article upon

the gross proceeds .or gross income from businesses". Certainly it would strain all bounds of reason to assume that of the nine groups of occupations or businesses taxed, only seven need be licensed; only seven are to be given the protection of confidence and secrecy by the Commission and its agents; and that the amounts the several counties receive shall be limited to a portion of the revenues received under this Act from but two of the nine taxed groups of businesses.

We hold that where the term "gross proceeds" is used, the Legislature meant "gross proceeds of sales" and, therefore, the phrase "gross proceeds or gross income" is synonymous with "gross proceeds of sales or gross income" and must be so construed.

This holding necessarily nullifies one premise upon which Arizona State Tax Comm. v. Frank Harmonson, Ariz., 163 P. 2d 667, was decided. We believe, for the reasons hereafter explained, that while a correct disposition of the claim for exemption was made in that case, the statement to the effect that 73-1303 (h) and 73-1303 (i) had set up a new base for taxation (gross proceeds or gross income), was unsound. To that extent only has our re-examination of this case caused us to depart from the reasoning therein expressed.

It will be noted that both "gross proceeds of sales" and "gross income" are defined by sec. 73-1302 of the Act, with the latter phrase encompassing by definition all of the items included in the former, and in addition such further items as "sales of service" not included in the definition of "gross proceeds of sales."

Reasoning from this plaintiff maintains that as the tax base for a contractor is, in effect, "gross proceeds of sales or gross income" (though literally "gross proceeds or gross income"), he is given the choice to file under one of two bases of differing size. And that insofar as this represents a standard, it is either so vague and uncertain as to make the Act unconstitutional, or it is discriminatory and a violation of due process of law if and when the Commission and the Courts direct the contractor to the base he is to use.

This seems neither a necessary nor a logical conclusion. It is a long-established principle that legislative enactments are presumed to be valid, and it is the duty of the court to sustain rather than to defeat statutes if such can be done consonant with mental honesty. Coggins v. Ely, 23 Ariz. 155, 202 P. 391; Loveland v. State, 53 Ariz. 131, 86 P.2d 942; Charleston Fed. Sav. & Loan Ass'n. v. Alderson, 324 U.S. 182, 65 S.Ct. 624, 89 L.Ed. 857.

"It is elementary that a court will not declare a law void for uncertainty or ambiguity, unless, after using every authorized means to ascertain and give the act an intelligible meaning, it is found impossible to clear up the doubt and dissolve the obscurity. Courts in the expounding of law cannot assume that the language of a statute

is a mere idle or meaningless collection of words, without significance or legal effect, but must, consistent with established principles of construction, where the intent is not evident or plainly expressed, search for the legislative intent that it may be declared and enforced. For the purpose of arriving at the intention, resort may be had to the words, the context, the subject-matter, the effects and consequences, the spirit and reason of the law, and other acts in pari materia. Sutherland, Statutory Construction (Lewis' 2d Ed.), § 586." Coggins v. Ely, supra [23 Ariz. 155, 202 P. 394].

This Court believes that the natural and proper import of the phrase "gross proceeds or gross income" as used in section 73-1303 (h), (i); and of "gross proceeds of sales or gross income" as used in 73-1303 (a), (b), (c), (d), (e), (f) and (g), is that a businessman filing under any of these sections must file under that base which fits his situation.

That the Legislature in fact intended this to be the case is well demonstrated in the wording of 73-1307: "A person engaged in any business in which sales are made on which the same rate does not *apply*, or in two (2) or more businesses with respect to which the *rate to be applied* is not the same, shall make separate returns of the gross proceeds of sales or the gross income of each business separately classified." (Emphasis supplied.)

The statute, by clear implication, denies that for *any one business* there is a *choice* of rates or bases. Instead, reference is made to the rate that *applies*. "Apply" means "to * * * pronounce, as suitable, fitting or relative * * *", and "applicable" means "capable of being applied; fit, suitable * * *." Webster's New International Dictionary, 2d Ed., 1934. It is the firm belief and holding of this Court that each business is thus compelled to select the base applicable to its situation, and that the nature of the business will itself determine which base is "suitable, fitting, relative, capable of being applied."

This is further shown by the imposition section of the statute, 73-1303, which levies "annual privilege taxes measured by the *amount or volume of business done by the persons on account of their business activities* * * * to be determined by the application of rates against values, gross proceeds of sales, or gross income, *as the case may be,* in accordance with the following schedule." (Emphasis supplied.)

Nowhere in this language is there the suggestion that the tax is to be measured by a part of the business done, but instead, the statute says "by the amount or volume of the business done by persons on account of their business activities". The requirement clearly is that the tax is to be levied upon all the business done. This is emphasized by the fact that a contractor's labor charges are specifically exempted from taxation by 73-1303 (h). Indeed, if the contractors had a choice of filing under either gross proceeds or gross income, there would be no

need to specifically exempt labor charges from their tax, for by picking the former base they could automatically achieve this result without further ado, and that statutory language exempting their labor charges would be just meaningless surplusage. Instead, however, that exception was necessary in order to nullify, for the section applicable to contractors, the broad implications of the general imposition language to the effect that the tax is to be levied on the amount resulting from all "of their business activities."

Finally, the phrase "as the case may be" again affirms the certainty of the tax and denies the interpretation urged by the plaintiff that the alternate bases mean "as the business man shall choose".

In advancing his argument that the Act sets up more than one possible base under which a businessman could file, plaintiff refers to the use of the word "value" as perhaps another possible choice of bases, adding to the confusion he believes already exists.

This word occurs in three sections of the Act; 73-1303 (c) 9, 73-1304 and 73-1305. In each case its application is clearly defined and its necessity obvious, for it is used where sales either are not made within the State (although the business is conducted here) rendering the other bases or measures (which are computed in part, at least, on sales) inappropriate, or where special circumstances as outlined in 73-1305 make the sales figure misleading.

This special use of the word "value" as a base to cover extraordinary circumstances not provided for by the other bases or measures in the Act, further supports our holding that the Legislature intended that each businessman must use that base or measure which is applicable to his situation.

We are convinced that the "Excise Revenue Act of 1935" is not so vague, indefinite and uncertain that reasonable men need differ as to its application or as to their rights and obligations thereunder, and, if the Act is interpreted in accordance with the mandate here given, there can be no basis for the charge that the Legislature has delegated or surrendered to the Commission or to the courts the power to prescribe the standard pursuant to which taxes are to be imposed. As to these challenges here interposed, we hold the Act is not void, nor violative of plaintiff's rights under the due process clause of either the State or Federal Constitution.

*Application of Exemption Statute:*

By this suit plaintiff alleges that even if the Act is constitutional, the excise taxes, paid under protest, have been levied upon sales to the United States Government, and as such, are exempt from taxation as being within the purview of sec. 73-1308 of the Act.

To understand plaintiff's claim, and our disposition of it, it is necessary to know that the present statutory definition of the word "sale", 73-1302, is restricted to sales

of tangible personal property, with some few exceptions not here applicable.

The exemption statute, 73-1308, in so far as pertinent states: "The taxes herein levied shall not be construed to apply to * * * any sales made to the United States Government, its departments or agencies * * *".

This statute does not bottom the exemption upon the tax base used for any particular business, nor upon the fact that the tax is alternately described within its very borders as an "excise", "sales", "privilege" tax, nor the fact that it is the businesses and not the sales which the act purports to tax. Instead, the exemption statute says, in effect, that whenever in the course of operation of any of the businesses subject to this tax, a sale of tangible personal property is made to the government, the amount of that sale shall be deducted from the total amount of the business upon which the tax is due.

The decisions of this court in the case of Luke v. East Vulture Mining Co., 47 Ariz. 220, 54 P.2d 1002, and the more recent case of O'Neil v. Byrne, 65 Ariz. 23, 173 P.2d 633, are in complete harmony with these views and we re-affirm the principles therein announced.

Under the rule announced in the Harmonson case, supra, on a factual situation identical with that in the present dispute, a contractor was held not to be within the purview of the exemption statute, 73-1308, primarily upon the premise that the Legislature, in enacting subsec. (h) of 73-1303 had *measured the tax upon contractors* by the phrase "gross proceeds or gross income". And, reasoning that the tax was not measured by sales or gross proceeds of sales, it was there held that 73-1308 (exempting sales to the government) did not apply, and the contractor had to pay the tax.

*In our discussion of the constitutionality* of the Act we pointed out that this distinction is untenable for, in fact, no new tax base was established by the phrase "gross proceeds or gross income" applicable to businesses falling under subsecs. (h) and (i) of 73-1303, and that "gross proceeds" is synonymous with "gross proceeds of sales". The rights of the plaintiff in the present case cannot, therefore, be determined by the grounds upon which the Harmonson case rested.

The statute exempting sales to the United States from taxation is then applicable to this plaintiff, if, and only if he actually made a sale of tangible personal property to the government. That question now becomes the crux of the matter in so far as plaintiff's right to a recovery is concerned.

The first decision in the case of Moore v. Pleasant Hasler Const. Co., 50 Ariz. 317, 72 P.2d 573 (by a divided Court), held that a contractor who builds permanent structures such as bridges and houses for the owner of land upon which such structures are placed, sells the materials entering into

such structure as tangible personal property to the owner, and the owner becomes and is the final consumer. This reasoning was adhered to in Crane Co. v. Arizona State Tax Commission, 63 Ariz. 426, 163 P.2d 656, 163 A.L.R. 261 (also determined by a divided Court). The effect of the decisions in these two cases is that in making a sale to a contractor the seller was selling tangible personalty for re-sale as tangible personalty, and that the contractor was not the consumer of the goods sold.

Not only, as admitted by the Crane case, supra, are "the greatest number of cases contrary to this rule", but we are convinced that the reasons supporting the contrary cases are, by far, more sound and more persuasive.

When a contractor fabricates his materials for the contractee, and the completed structure is erected on the owner's land, it is as much real property as the land itself. The constituent elements of tangible personal property have been destroyed by their incorporation into the completed structure. And such a contractor, therefore, is not making a sale of tangible personalty to his contractee.

After the second Pleasant Hasler case (Moore v. Pleasant Hasler Const. Co., 51 Ariz. 40, 76 P.2d 225) and until the Crane case, this Court so held. Martin v. Moore, 61 Ariz. 92, 143 P.2d 334. For cases from other jurisdictions so construing the effect of the second Pleasant Hasler decision, supra, see State Board of Equalization v. Stanolind Oil & Gas Co., 54 Wyo. 521, 94 P.2d 147; Utah Concrete Products Corp. v. State Tax Comm., 101 Utah 513, 125 P.2d 408. In the Crane case, support was found for veering away from this view by improperly construing the effect of the second Pleasant Hasler decision. The opinion in the second Pleasant Hasler case stated that the Legislature [51 Ariz. 40, 76 P.2d 228]: "* * * never intended that contractors should be treated as retailers of tangible personal property" and that, in fact "* * * it was then, for the first time (at the time of the passage of subsec. (h), 73-1303, imposing a tax on contractors), placing them under the provisions of the sales tax law, and requiring them to pay what, in its judgment, was a proper rate."

The above-quoted view is thoroughly supported by the definitions of terms in the Act itself, sec. 73-1302 of which defines "retailer" as "* * * every person engaged in the business of making sales at retail * * *"; "sale at retail" as "* * * a sale for any purpose other than for resale in the form of tangible personal property * * *"; and "sale" as "* * * transfer * * * of tangible personal property * * *".

While perhaps a contractor may be making a sale in the loose sense of the word, and while, in that loose sense it might also be a sale at retail, he is certainly not making a sale at retail of tangible personal property which is the necessary meaning of the term "sale" when used in

this Act. By the definitions in this Act a contractor when fabricating personalty into realty neither sells, resells, sells at retail, nor can he be considered a retailer.

The statement in the Crane case [163 P. 2d 659] to the contrary (set forth below) seems unsupportable. "While the latter opinion (second Pleasant Hasler case) holds that no tax on the basis of retail sales may be imposed on contractors, it does not hold nor decide that a contractor who buys tangible personal property for use, and actually used, in construction, is not buying for resale."

It seems to us anomalous and a contradiction in terms that a contractor might, by the rule of the Crane case, be buying personalty for resale (at retail) as personalty, after the second Pleasant Hasler case held that he was not a "retailer of tangible personal property". Therefore, to the extent that the Crane case holds that contractors in fabricating personalty into realty are selling tangible personalty to the contractee, that case is specifically overruled, and the holding of the second Pleasant Hasler decision on this point is reaffirmed.

However in fairness to the materialmen who have relied upon our express holding in the Crane case that a sale to a contractor was a sale for resale and was not taxable, we now hold that our decision in the instant case shall be given prospective effect only. Unquestionably we have the right to so limit the application of this ruling. Button v. Drake, 302 Ky. 517, 195 S.W.2d 66; Oklahoma County v. Queen City Lodge, etc., 195 Okl. 131, 156 P.2d 340; Continental Supply Co. v. Abell, 95 Mont. 148, 24 P.2d 133; State v. Jones, 44 N.M. 623, 107 P.2d 324.

Both parties here are agreed that decisions from other states are not too helpful and, in fact, are sometimes misleading by reason of the differences in Excise Acts. Nevertheless, the one basic principle that may be gleaned safely from the reported cases is that when a completed structure is erected on the owner's land, it is as much real property as the land itself. By no definition or reasoning is it tangible personal property. The constituent elements of personalty have been destroyed by a metamorphosis, i. e. by their incorporation into the completed structure. Through the contractor's application of skill and labor to the materials, something different has been wrought from their use and union, and the materials purchased are no longer to be distinguished as personalty. Therefore, we hold that when the contractor buys materials and supplies for use in fulfilling his contract, he does not purchase them for resale as tangible personal property, but for use in producing the completed job. He is not a trader or dealer. Acorn Iron Works v. State Board of Tax Administration, 295 Mich. 143, 294 N.W. 126, 139 A.L.R. 368; City of St. Louis v. Smith, 342 Mo. 317, 114 S.W.2d 1017; Wood Preserving Corp. v. State Tax Commission, 235 Ala. 438, 179 So. 254; State Board of

Equalization v. Stanolind Oil & Gas Co., supra; Atlas Supply Co. v. Maxwell, 212 N.C. 624, 194 S.E. 117; Albuquerque Lumber Co. v. Bureau of Revenue, 42 N.M. 58, 75 P.2d 334; Utah Concrete Products Corp. v. State Tax Comm., supra; State v. Christhilf, 170 Md. 586, 185 A. 456; State v. J. Watts Kearny & Sons, 181 La. 554, 160 So. 77; and see 98 A.L.R. 837; Blome Co. v. Ames, 365 Ill. 456, 6 N.E.2d 841, 111 A.L.R. 943; Herlihy Mid-Continent Co. v. Nudelman, 367 Ill. 600, 12 N.E.2d 638, 115 A.L.R. 491; 139 A.L.R. 373.

This legal principle runs as a firm thread through many allied fields of the law. For example, after a contractor has fabricated personalty into realty, his statuory lien is not against the personalty he fabricated or installed, but against the realty, sec. 62-201, A.C.A.1939. Again, when by conditional sale, fixtures sold are affixed to realty, reservation of property rights in these fixtures are lost by the seller unless there is filing of the conditional sales agreement and/or consent by the property owner. Sec. 52-604, A.C.A.1939. See also 13 A.L.R. 448; Abramson v. Penn, 156 Md. 186, 143 A. 795, 73 A.L.R. 748; People's Sav. & Trust Co. v. Munsert, 212 Wis. 449, 249 N.W. 527, 250 N.W. 385, 88 A.L.R. 1318; Smyth Sales Corp. v. Norfolk Bldg. & Loan Ass'n, 116 N.J.L. 293, 184 A. 204, 111 A.L.R. 362.

Applying these principles to the instant case it is clear that the plaintiff made no sales of tangible personal property to the United States government, for he admits in his complaint that all of the materials he claims to have sold were, in fact, fabricated by him into structures on government land. The exemption statute, sec. 73-1308, has no application to the transactions here involved.

*Estoppel:*

It is true that during the time plaintiff was engaged in the contracting here in question he might have passed this tax on to the government had he not been misled, by an improper interpretation of the Act by the Commission, into believing no tax was due. Still, it is the settled law of the land and of this jurisdiction that as taxation is a governmental function, there can be no estoppel against a government or governmental agency with reference to the enforcement of taxes. Were this not the rule the taxing officials could waive most of the state's revenue. The Constitution, art. 9, sec. 1; Crane Co. v. Arizona State Tax Commission, supra; Arizona State Tax Commission v. Frank Harmonson Co., supra; State Tax Comm. of Arizona v. Martin, 57 Ariz. 283, 113 P.2d 640; 31 C.J.S., Estoppel, § 147, pp. 434, 435. Therefore there is no merit to plaintiff's claim of estoppel in this case.

*Discrimination:*

Finally, plaintiff charges that both the Act itself and its administration by the Commission are discriminatory and constitute a denial of equal protection of the laws to him. Specifically he cites these exam-

ples: (a) Premiums and subsidies paid to mining companies by the government have been excluded by the Commission from being a part of "gross proceeds of sales or gross income" and are thereby exempt from taxation. (b) In certain businesses a deduction is permitted by the Commission for personal service or labor, e. g. a lump sum of 50% of gross income is deducted by the Commission before the tax is applied to tire recappers and morticians, and on garages and repair shops the Commission exacts a tax on parts and materials only, exempting labor and service from taxation when separately billed. (c) The Commission allows the exemption statute (exempting sales to the government from taxation) to apply to mining businesses and office building businesses but denies its application to contractors and dealers in lumber and gravel. These are serious charges that stand admitted by the Commission's motion to dismiss the plaintiff's complaint. However, in dealing with these allegations, a clear distinction must be made between charges that the Act as passed by the Legislature is discriminatory, and allegations that the Commission is enforcing the Act in a discriminatory manner.

As to the Act itself it has been held repeatedly that the Legislature has the right to classify the objects of taxation, and "if there is any reasonable ground for the classification * * * and the law operates equally upon all within the class, there is no violation of constitutional limitations, state or Federal, relating to class legislation or equal protection of the laws." 51 Am.Jur. sec. 169, p. 225. This is the settled rule in Arizona. Stults Eagle Drug Co. v. Luke, 48 Ariz. 467, 62 P.2d 1126; McAhren v. Bradshaw, 57 Ariz. 342, 113 P.2d 932; Arizona State Tax Comm. v. Harmonson, supra. As to the improper administration of an excise act constituting a denial of equal protection, it must first be shown that such administration was deliberate and not the result of a mere error in judgment, and even then courts are hesitant to find a denial of equal protection when the taxpayer has a remedy or method of compelling the administrative officials to perform their functions properly. 51 Am.Jur. secs. 170, 171, pp. 225–228.

In the case before us there is nothing to suggest that "contractors" constitute an unreasonable classification within the Act, nor that the Act operates unequally or in a discriminatory manner as between contractors. Certainly there is no allegation suggesting deliberate mal-administration of the Act by the Commission. And, in fact, to show that there has been any improper interpretation of the Act by the Commission in favor of groups other than contractors it would seem appropriate that the interested parties be joined, for each is entitled to his day in court and to the protection of not having his rights adjudicated behind his back. If such improper interpretation of the Act by the Commission exists, this is neither the kind

of an action nor are the necessary parties here present to give the Court authority to decide that issue. For these reasons we believe that plaintiff's charge of discrimination and denial of equal protection of the laws is unfounded.

We have carefully considered all of the nine assignments of error and the four propositions of law submitted by the plaintiff which attack the correctness of the ruling of the trial court dismissing his complaint. From what we here have said it must now be apparent that we believe: (a) That as the plaintiff made no sale of tangible personal property to the government, the exemption statute, 73-1308, has no application and, therefore, the tax levied on the plaintiff by the Commission was, in this respect, lawful. (b) The Excise Revenue Act of 1935 as amended, does not impose a duty upon plaintiff in terms so vague, indefinite, and uncertain that reasonable men need differ as to its application or as to their rights and obligations thereunder. Properly construed, two or more alternative bases for taxation have not been set up by the Act. (c) While the Legislature may not delegate or surrender to the Commission or to the courts the power to prescribe the standard pursuant to which taxes are to be imposed, nor may the Commission or the Courts appropriate that power unto themselves, here no legislative functions have been delegated by the Act to either the Commission or the courts. (d) The Act itself sets up no basis for petitioner's charge of discrimination. And if its interpretation by the Commission has been discriminatory, this is neither the proper method nor are the necessary parties here before us to settle this question.

We hold that the rights guaranteed the plaintiff by the Federal and State Constitutions have not been violated in any respect by the Excise Revenue Act of 1935, as amended, and the tax here levied by it.

The judgment of the trial court dismissing the plaintiff's complaint is affirmed.

STANFORD, C. J., and LaPRADE, J., concurring.