330 P.2d 988

The STATE TAX COMMISSION of The State of Arizona and Thad M. Moore, Warren Peterson and William Stanford, as members of and constituting the same, Appellants and Cross-Appellees,

v.

WALLAPAI BRICK AND CLAY PRODUCTS, Inc., a corporation; Western Clay Products Company, Inc., a corporation; Clinton Campbell Contractors, Inc., a corporation doing business as Phoenix Brick Yard; John S. Sundt, doing business as Tucson Pressed Brick Company; and Wm. F. Grabe, doing business as Grabe Brick Company, Appellees and Cross-Appellants.

No. 6421.

Supreme Court of Arizona.

Oct. 15, 1958.

Robert Morrison, Atty. Gen., and D. Kelly Turner, Special Asst. Atty. Gen., for appellants.

Evans, Kitchel & Jenckes, and James Powers, Phoenix, for appellees.

JOHN F. MOLLOY, Superior Court Judge.

This is an appeal and a cross-appeal from a judgment rendered in the lower court in a declaratory judgment action. The plaintiffs are various brick manufacturing companies who are engaged in the business of buying land containing raw brick clay, removing such clay from the ground, refining same by various screening processes, mixing such clay with water, forming such clay into brick, drying the bricks and baking them into finished bricks of the type used in the construction industry.

The second amended complaint in this action, upon which declaratory judgment was rendered, after motions for summary judgment were filed by both the plaintiffs and the defendants, petitioned that the court declare that certain regulations of the Arizona State Tax Commission, hereinafter referred to as Commission, be declared invalid as applied to the plaintiffs' businesses because the said regulations were allegedly in violation of A.R.S. § 42–1301 et seq., these sections being the Excise Revenue Act of 1935 as amended. A.R.S. § 42–1310, subdivision (a) of paragraph 2, under which the plaintiffs' businesses were alleged to be taxed, reads in part as follows:

"The tax imposed by subsection A of § 42–1309 shall be levied and collected at the following rates:

* * * * * *

"2. At an amount equal to one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

"(a) Mining, quarrying, smelting, or producing for sale, profit or commercial use, any oil, natural gas, limestone, sand, gravel, copper, gold, silver or other mineral product, compound or combination of mineral products, or felling, producing or preparing timber or any product of the forest for sale, profit or commercial use."

The facts of the case are not in dispute and have been stipulated by the parties. The manner and method used by plaintiffs in the removal of brick clay from the ground and the processes used in converting such raw clay into the finished brick are a part of the stipulations reached. Of particular interest are the following facts:

Brick clay in the ground has a very small value, it being stipulated that such value is approximately 2½¢ per cu. yd.; from 2¼ cu. yd. of raw clay 1,000 finished bricks are produced; the fair market value of 1,000

finished bricks is $25; brick clay is a "mineral" as that term is understood in geology; raw clay severed from the land, including such raw clay before and after refining processes, has no market value; such clay, severed from the land, is not bought and sold and there is no regular market for it.

The regulation of the Commission challenged by the plaintiffs' first cause of action is regulation 2.2.7, reading as follows:

"Tax on Sales. The taxable value of mineral products produced or prepared for use is the sale price or market value after processing. For example, the measure of the mining tax on the production for sale of sand and gravel is the sale price which, in part at least, depends upon the extent of the preparation and processing. River run sand and washed and graded sand and gravel vary in sale price or value, and the amount of the tax is measured accordingly. Shale prepared and made into cement and clay processed into bricks constitutes production 'for sale, profit, or commercial use' subject to the tax, and the amount of the tax is determined by the sale price or market value of the end product, in this case being either cement or building bricks. Likewise, the sale price or value of quarried building stone processed or cut to marketable size or specification determines the amount of the tax."

The regulation challenged by the second cause of action is regulation B–1.4, which will not be quoted for the reason that it was stipulated by the parties that this regulation is no longer in effect, it having ceased to be effective on August 23, 1956. The Commission admitted in its answer and in the stipulation filed that, in pursuance of the "regulation", it proposed to impose a liability upon the plaintiffs on the gross proceeds of sales or gross income from the businesses of the plaintiffs, under the above quoted subsection of the Excise Revenue Act, and that it proposed to include within such proceeds or gross income all sales made to persons licensed as contractors. The plaintiffs contend, on the other hand, that they are entitled to the exemption or deduction allowed by A.R.S. § 42–1321, subsection A, paragraph 3, which reads as follows:

"A. This article shall not apply to:
*  *  *  *  *  *

"3. Sales of tangible personal property to a person licensed as a contractor under chapter 10 of Title 32 who holds a valid privilege tax license for engaging or continuing in the business of contracting under this article when the tangible personal property so sold is incorporated or fabricated by the contractor into any structure, project, development or improvement in fulfillment of a contract therefor."

Defendants' regulation B–1.4 is quoted in the complaint, and it is apparent that this regulation when in effect did provide for a tax upon the plaintiffs' businesses without permitting any exemption or deduction for sales to contractors.

The lower court declared, in its judgment, that the Excise Revenue Act did not provide for an excise tax upon the income received from the sale of finished bricks, but only upon such part of plaintiffs' "gross income as is attributable to extracting and purifying clay". The court further declared that such tax basis "does not exceed the fair value of clay after it has passed through plaintiffs' vibrators and the impurities have been sifted from it"; that "The process of making bricks after the clay has been purified is that of manufacturing"; that regulation 2.2.7 is invalid to the extent that it is inconsistent with the foregoing; and that "Proceeds received from sales to contractors are not proper deductions in computing the foregoing tax".

Both parties have appealed from that portion of the judgment unfavorable to their respective positions, and the various assignments of error will be discussed and disposed of in the order that seems most logical to the court.

The defendants attempt to raise the procedural question of whether a suit for declaratory judgment is a proper action to test the meaning of the provisions of the Excise Revenue Act. The defendants rely upon the case of Smotkin v. Peterson, 73 Ariz. 1, 236 P.2d 743, to support the legal proposition that the "exclusive" remedy for determining whether certain income is taxable under this act is to pay such taxes under protest and follow the remedy allowed under A.R.S. § 42–1339, for the recovery thereof.

If this assignment were to be disposed of in defendants' favor, consideration of other issues would not be necessary, and the court, therefore, goes first to this question.

It should be noted that the only way in which the defendants have raised this procedural question is by making a motion to dismiss for failure to state a claim directed at the plaintiffs' complaint, which motion was denied by the lower court, and by assigning as error the failure of the lower court to grant such motion. The defendants have not questioned in any way the judgment as being beyond the issues framed by the pleadings, nor have they raised in any way the mootness of a challenge to a regulation which has since been repealed by the Commission.

Since the Smotkin v. Peterson decision the Arizona legislature adopted the Administrative Procedure Act (Ch. 97, Laws of '52), A.R.S. § 41–1007 providing in part as follows:

"A. Any·person who is or may be affected by a rule may obtain a judicial

declaration of the validity of the rule by filing an action for declaratory relief in the superior court of Maricopa County, in accordance with the provisions of article 2 of chapter 10, title 12. In addition to any other ground which may exist, the rule may be declared invalid for a substantial failure to comply with the provisions of this article, or in case of an emergency rule, upon the ground that the findings and statement of emergency do not constitute an emergency within the provisions of § 41–1003.

"B. The provisions of this section shall not be deemed to exclude other remedies which may be available in a particular case for testing the legality of any rule."

■ Inasmuch as plaintiffs' complaint directly challenged rules which were admittedly adopted in pursuance of the Administrative Procedure Act, and inasmuch as the action is in compliance with Article 2 of Chapter 10, Title 12 A.R.S. (Uniform Declaratory Judgments Act of 1922), this court believes that the lower court properly refused to dismiss either cause of action of the plaintiffs' complaint for failure to state a claim. The Smotkin v. Peterson case does not purport to deny to the legislature the prerogative of granting additional remedies to the taxpayer for the testing of our tax laws, as it so clearly did with the adoption of the above quoted provisions, which are limited to the testing of "rules" adopted in pursuance of the Administrative Procedure Act.

■ By the stipulations filed in this action and by the failure to make appropriate assignments of error, this court believes that the defendants have waived any objections to the judgment rendered by the lower court insofar as it might go beyond the issues raised by the pleading filed. The stipulation pertaining to the intent of the Commission to tax plaintiffs' income under "regulation" and the plaintiffs' allegations that such a tax is in violation of law seems to adequately raise issues to support a judgment. The court will therefore proceed to decide the matters of law raised by the briefs.

The Commission claims the lower court erred in finding that only the value of the purified clay is taxable. The plaintiff brickmakers have cross-appealed, contending that there should be no tax whatsoever under the provisions of A.R.S. § 42–1310, subdivision (a) of paragraph 2, supra, upon its business, in that this subdivision was primarily designed, insofar as applicable, to tax the business of "mining", and that the plaintiffs' business cannot be classified as mining, or, in the alternative, that mining is such an inconsequential portion of its business that it does not merit the application of this tax.

**30**

The court has not found the question presented to be without difficulty, but has come to the conclusion that the legislature intended and did pass a tax under this subdivision upon all the gross income received by the plaintiffs from the sale of finished brick. The court is not unmindful of its oft-repeated principle of interpretation that ambiguous or doubtful provisions of a tax act will be construed in the taxpayer's favor and against contentions of taxing authorities. State Tax Commission v. Miami Copper Co., 74 Ariz. 234, 246 P. 2d 871. The court does not intend to diverge from this principle, but, to the contrary, is of the opinion that when the Excise Revenue Act is read as a whole, it is the clear intent of the subdivision of the code under construction that a tax be applied to the gross proceeds of sale from finished bricks.

As part of their argument the plaintiffs have contended that the making of brick, after the initial removal of the brick clay from the ground, is "manufacturing", and that by the repeal of that section of the Excise Revenue Act which had previously imposed a tax upon the business of manufacturing, the legislature expressed its desire to exempt manufacturing from the purview of this Act. (Ch. 57 of the Laws of '50 (1st Special Session).

While the court agrees that the making of brick is "manufacturing", see: Commonwealth v. Savage Fire Brick Co., 157 Pa. 512, 27 A. 374, the court does not agree that the legislature has exempted all forms of manufacturing from the application of the Excise Revenue Act. This is made very clear from the language of A.R.S. § 42–1311, subsection B, which reads as follows:

"B. In the case of persons engaged in the businesses classified in subdivision(a) of paragraph 2 of § 42–1310, whose incomes, wholly or in part, are derived from service or *manufacturing* charges instead of from sales of the products manufactured or handled, the rate shall be applied to the gross income of such persons derived from such service or *manufacturing* charge." (Emphasis supplied.)

This subsection of the Act clearly indicates that manufacturing is included within some of the business activities which are taxed in pursuance of that portion of the taxing statute which is now before us. In its brief the plaintiffs sought to label this subsection as being a "mining" tax. The defendants have taken the position, and the court believes rightfully, that such a label would be a misnomer inasmuch as this subsection applies not only to mining, quarrying and smelting, but also to *"producing for sale, profit or commercial use, any * * * other mineral products, compound or combination of mineral products, * * *."* (Emphasis supplied.) The plaintiffs have argued somewhat persua-

sively that if this language is given its literal meaning, a tax would result upon many kinds of manufacturing which the legislature clearly did not intend to tax, such as manufacturing of a gold watch or a silver spoon. The court agrees that the legislature never intended to tax activities which fall within the categories suggested by the plaintiffs, but, nevertheless, is of the opinion that the finished clay brick is a mineral product which "has been produced" by the plaintiff brickmakers, and is within the purview of this taxing statute. Reading the sections of this Act as a whole, it is apparent to this court that the legislature had in mind, when passing this particular subsection, a tax upon businesses which were producing for sale, profit or commercial use the mineral and lumbering resources of the state. Without intending to delimit exactly the application of this particular tax upon various forms of manufacturing of mineral products, the court certainly does not believe that it was intended that the tax be imposed upon the manufacturing of articles entirely disassociated with mining operation merely because such articles are manufactured from mineral products.

Even the plaintiffs admit that at least the first part of their business operations, that of removing the clay from the earth's surface, is probably "mining". This is supported by several decisions from other jurisdictions. Rock House Fork Land Co. v. Raleigh Brick & Title Co., 83 W.Va. 20, 97 S.E. 684, 17 A.L.R. 144; Certain-Teed Products Corporation v. Comly, 54 Wyo. 79, 87 P.2d 21. The plaintiffs contend, however, that this removal is not a "complete business" because it results in no income to the plaintiffs, in that when the mining phase of their operations is complete, they have a product which has no market value. The court agrees with this argument, in part, and for this reason believes the lower court's decision on this question to be erroneous. It is upon the "business" of producing mineral products *"for sale, profit or commercial use"* that the tax is imposed. It is obvious that when the clay has been refined and the process of manufacturing bricks commences there has been no "sale"; neither could there be any sale of the product upon which proceeds the tax could be imposed. It seems equally clear that the plaintiffs have realized no "profit" at this point. And, it would also seem that this raw clay has no "commercial use" as yet. The word "commercial" comes, of course, from the word "commerce", which according to Webster's New International Dictionary has as its primary meaning:

"Business intercourse; esp., the exchange or buying and selling of commodities, and particularly, the exchange of merchandise on a large scale between different places or communities; extended trade or traffic."

The court is of the opinion that the removal of clay from the earth's surface and the fabrication thereof into finished bricks, the first marketable product produced, is a "business" and is, as a whole, within the purview of A.R.S. § 42–1310, subdivision(a) of paragraph 2, supra.

The next question of law presented to the court is the question of whether the plaintiffs are entitled to be exempt from the application of the Excise Revenue Act for the income received from sales of their finished products to contractors.

■■ The Commission's position is that the Excise Revenue Act should be interpreted as imposing upon the operation of the plaintiffs' businesses both the so-called "mining tax" and also the so-called "retail sales tax", A.R.S. § 42–1312. It is next argued that it was the intent of the legislature to grant an exemption as to "sales" made to contractors only as to the latter tax and that the mining tax still must be paid upon all of the plaintiffs' income. The court believes the legislature did not intend, as the Excise Revenue Act is now written, to tax any income more than once to any one person. The court does not believe it necessary to pass upon defendants' contention that the legislature could constitutionally tax revenue under this Act more than once, to the same person, if it chose to do so, because the court does not believe that the legislature has chosen to do so. In all of the many cases decided by this court in attempting to clarify this Act it has always been assumed that income would be taxed only once to any one person. This is particularly apparent in the rehearing decision in the case of Moore v. Pleasant Hasler Const. Co., 51 Ariz. 40, 76 P.2d 225. The basis in this rehearing opinion for a reversal of the court's prior position (holding that contractors are subject to the retail sales tax) is that the legislature had passed a special tax upon the business of contracting since the original opinion of the court. Moore v. Pleasant Hasler Const. Co., 50 Ariz. 317, 72 P.2d 573. The court reasoned that because a special tax had been imposed upon this business, the business was automatically removed from the purview of the retail sales tax.

This court has previously stated that: "Those engaged in mining, timbering, etc., are not taxable on a retail sale basis." Crane Co. v. Arizona State Tax Commission, 63 Ariz. 426, 163 P.2d 656, 659, 163 A.L.R. 261. There is a specific section of the Excise Revenue Act which seems to dispose of the defendants' contention that plaintiffs' activities should be regarded as subject to both the tax imposed by A.R.S. § 42–1310 and by § 42–1312. This section is § 42–1319, reading as follows:

"A. Any person engaging in any of the following classified businesses who

sells the product of such business at retail in this state shall make return of the gross proceeds of such sales and pay the tax at the rate and subject to the provisions imposed by § 42–1312:

"Manufacturing, baling, crating, boxing, barrelling, canning, bottling, sacking, preserving, processing or otherwise preparing for sale or commercial use, livestock, agricultural or horticultural products, or *any* product, article, substance or commodity except those classified in paragraph 1 and subdivisions (b) through (i) of paragraph 2 of § 42–1310, § 42–1313 and paragraph 2 of § 42–1315, and except those specifically exempt by and under this article.

"B. *When the retail rate applies to such sales as provided by this section, such person shall be exempt from any other tax on the gross proceeds derived from such sales imposed by this article.*" (Emphasis supplied.)

This specific provision, of course, controls general provisions, and clearly indicates that those engaged in the activities taxed under § 42–1310, subdivision (a) of paragraph 2 thereof (mining, lumbering, etc.) are taxed under § 42–1312 as retailers when they sell their products at retail, as they are doing when they sell to contractors. Johnson v. Crane Co., 75 Ariz. 156, 253

P.2d 341. That this section applies to the "mining" business has been previously indicated in the first Pleasant Hasler case (72 P.2d at page 579).

The second portion of the defendants' argument, to the effect that the grant under A.R.S. § 42–1321, supra, pertaining to sales of contractors was only intended to apply to the retail sales tax, is disposed of by the clear wording of this section of the code and by prior decisions of this court. Any regulations of the Commission to the contrary must give way to the clear mandate of the law. State Board of Barber Examiners v. Walker, 67 Ariz. 156, 192 P.2d 723, 729.

This exemption is not in any way ambiguous. It categorically states that "this article" (the entire Excise Revenue Act) shall not apply to:

"3. Sales of tangible personal property to a person licensed as a contractor * * *."

This court has previously construed an exemption statute worded very similarly pertaining to "sales" to the U. S. Government. Luke v. East Vulture Mining Co., 47 Ariz. 220, 54 P.2d 1002; State Tax Commission v. Al Stovall Manganese, 84 Ariz. 333, 327 P.2d 1011. In the Stovall Manganese case the court was interpreting § 73–1308, A.C.A.1939, which is now replaced by A.R.S. § 42–1321, subsection C.

The court cannot see any basic difference between the provisions of this exemption statute and that of the exemption statute now before it. The same argument now presented, that the Excise Revenue Act is not a tax on *sales* but rather a tax upon business conducted, and that therefore the exemption statute, because it refers to "sales", should be interpreted to apply only to the "retail sales tax", was also made in this Stovall Manganese case. In overruling this argument the court quoted with approval from Duhame v. State Tax Commission, 65 Ariz. 268, 179 P.2d 252, 171 A.L.R. 684, in part, as follows:

"'* * * Instead, the exemption statute says, in effect, that whenever in the course of operation of any of the businesses subject to this tax, a sale of tangible personal property is made to the government, the amount of that sale shall be deducted from the total amount of the business upon which the tax is due.'" [84 Ariz. 333, 327 P.2d 1012.]

The defendants also make the argument, in support of their contention in this connection, that the deductions listed under § 42-1321, supra, are in "groupings", and that those under subsection A are obviously intended to apply only to the retail sales tax. The court does not believe this is so, in that subparagraph 2 under said paragraph A seems to be obviously directed towards the tax placed upon the business of transporting for hire persons or property by motor vehicle, which businesses are taxed under the same section (42-1310) as mining and lumbering. But, even if there were such a "grouping", it could not offset the plain intendment of this section which provides that the Excise Tax Act, as a whole, shall not apply to receipts from sales to licensed contractors.

The judgment of the lower court is reversed with instructions to enter a judgment in accordance with this opinion, each party to bear their own costs.

UDALL, C. J., and PHELPS, STRUCKMEYER and JOHNSON, JJ., concur.

Note: Dudley W. WINDES, Justice, having declared himself disqualified, the Honorable John F. MOLLOY. Judge of Superior Court, Pima County, was called to sit in his stead and participated in the determination of this appeal.